UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SIR JORDAN COSBY,

          Plaintiff,

v.                                             Case No. 22-cv-639-pp

JESSICA MAYFIELD,
and NURSE SCOTT,

          Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, ALLOWING PLAINTIFF TO FILE AN AMENDED COMPLAINT AND GRANTING MOTION FOR UPDATE ON SCREENING PROCESS (DKT. NO. 7)**

Sir Jordan Cosby, who is incarcerated at Columbia Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to intervene and stop him from harming himself. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 17, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $17.77. Dkt. No. 6. The court received that fee on July 1, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names two defendants—C.O. Jessica Mayfield and Nurse John Doe Scott. Dkt. No. 1 at 1. It alleges that on March 1, 2022, the plaintiff was housed in the restricted housing unit at Columbia Correctional. Dkt. No. 1 at 2. Sometime before 10:00 a.m., during medication pass, Mayfield was standing in front of the plaintiff's cell door. Id. The plaintiff says he had the window of his cell covered and was "engaging in self-harm by cutting [him]self with a piece of mental [*sic*]." Id. He alleges Mayfield "just stood there doing

nothing." Id. The plaintiff says Scott said at one point, "Your [*sic*] not doing a good job," after the plaintiff told Mayfield and Scott that he was cutting himself in an attempt to commit suicide. Id. The plaintiff says both defendants were aware "of [his] propensity to commit self-harm in attempt to commit suicide." Id. at 2–3. The plaintiff asked to be placed on observation status to protect himself from himself. Id. at 3.

The plaintiff asks the court to note that he "fully exhausted all [his] administrative remedies." Id. He enclosed with his complaint several exhibits showing his efforts to exhaust his administrative remedies before filing the complaint. Dkt. No. 1-1. Those documents show that the institutional complaint examiner's office received the plaintiff's grievance on April 13, 2022. Id. at 1. (The plaintiff did not attach the grievance.) A complaint examiner reviewed the grievance and summarized it as alleging that Mayfield and Scott "deliberately ignored [the plaintiff's] suicide attempt" on March 1, 2022, at around 10:00 a.m. Id. at 2. The complaint examiner noted that the grievance was received forty-three days after the alleged incident, well beyond the fourteen-day limit for filing institutional complaints. Id. (citing Wis. Admin. Code §DOC 310.07(2)). The plaintiff alleged that he was "prioritizing and dealing with health" as good cause to excuse his untimeliness. Id. The complaint examiner noted that the plaintiff "has used the Inmate Complaint Review System (ICRS) 127 times previously," so he "understands the rules associated with the ICRS." Id. The complaint examiner said that the plaintiff "does not present any evidence that shows how he was denied the use of or

4

inhibited in any way from using the [ICRS] since the date of the occurrence." Id. The complaint examiner recommended rejecting the grievance as untimely and denying the plaintiff's request to excuse his late filing for good cause. Id.

The plaintiff appealed the complaint examiner's rejection of his grievance. Id. at 4. He asserted that the complaint examiner was biased against him because the plaintiff was on observation status when he filed the grievance. Id. He said he was not allowed or able to file an institutional grievance while on observation status, "so the time [he] spent on obs should allow [him] to get this inmate complaint to be fully exhausted to [his] administra[tive] remedies." Id. The warden of Columbia Correctional accepted the complaint examiner's decision and rejected the plaintiff's grievance and appeal. Id. at 6.

The plaintiff seeks unspecified punitive and compensatory damages, unspecified declaratory judgment and a court order transferring him to Racine Correctional Institution or the Wisconsin Resource Center for mental health treatment. Dkt. No. 1 at 4. He also asks for a jury trial. Id.

C. Analysis

The plaintiff's allegations amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition against cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. As a matter of law,

"the risk of suicide is an objectively serious medical condition." Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019). Because the plaintiff seeks damages, however, he also must show that he suffered a cognizable harm as a result of the threat he posed to himself. See Lord v. Beahm, 952 F.3d 902, 905 (7th Cir. 2020).

When the harm at issue is attempted suicide, the subjective component requires the plaintiff to make "'a dual showing that the defendant[s]: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.'" Lisle, 933 F.3d at 716–17 (quoting Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006)). Satisfying this standard requires showing "'more than mere or gross negligence, but less than purposeful infliction of harm.'" Id. at 717 (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)). In other words, the plaintiff must show that the defendants were "cognizant of the significant likelihood that [the plaintiff] may imminently seek to take his own life." Collins, 462 F.3d at 761. But ignoring "an insincere suicide threat from an inmate wanting nothing more than attention" does not confer liability under the Eighth Amendment. Lord, 952 F.3d at 905. The evidence must show the prison official's "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45).

The plaintiff alleges that Mayfield and Scott were standing in front of his cell while he cut himself with a piece of metal in what he says was a suicide

attempt. He says both defendants knew he had attempted suicide in the past and knew he was again harming himself in a suicide attempt. But he does not describe the results of his efforts, does not say whether he suffered any injuries and does not say whether he required medical treatment. He says Scott told him he was "not doing a good job," which suggests the cuts the plaintiff inflicted might have been superficial and unlikely to pose a serious risk to his health. The plaintiff cannot recover damages under §1983 without alleging that he suffered "a recoverable injury." Lord, 952 F.3d at 905. Because the complaint does not allege that the plaintiff suffered *any* injury from his alleged suicide attempt, it does not satisfy the objective element of an Eighth Amendment claim.

Nor does the complaint state sufficient facts to satisfy the subjective component. The plaintiff alleges the defendants knew he was cutting himself and knew that he had a "propensity to commit self-harm in attempt to commit suicide." Dkt. No. 1 at 3. But he alleges that he had his window covered, so it is not clear how either defendant could see what he was doing inside the cell. The plaintiff says that he told both Mayfield and Scott that he was cutting himself, but to state a claim, the plaintiff must allege facts showing that he was engaged in more than an "insincere suicide threat." Lord, 952 F.3d at 905.

As written, the complaint does not state an Eighth Amendment claim. But it is possible that if he filed an amended complaint providing additional details, the plaintiff could state an Eighth Amendment claim. The court will

7

allow him to file an amended complaint to try to address the deficiencies the court has identified.

The court will provide the plaintiff with its amended complaint form. When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights. The plaintiff should include any facts showing that Mayfield and Scott had reason to know that he was making a serious, sincere effort to harm himself. He must include any facts showing what damage he did to himself, whether he sustained any injuries and whether he required medical treatment.

The plaintiff must list on the first page of the amended complaint form the case number for this case. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior

8

complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

Even if the plaintiff files an amended complaint that states a claim for relief, the plaintiff may not proceed on his requests for declaratory or injunctive relief. The plaintiff seeks unspecified declaratory judgment, which the court presumes is a judgment declaring that the defendants' actions on March 1, 2022 violated his rights. But declaratory relief is available only if the relief sought is *prospective*—that is, if the plaintiff seeks relief from future harm. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). The plaintiff may not use §1983 to obtain a judgment against the defendants "declaring that they violated federal law in the past." Id.; see Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)) ("[U]nder § 1983, declaratory or injunctive relief is only proper if there is a continuing violation of federal law.") Because the plaintiff alleges only that the defendants violated his rights in the past, and does not allege a continuing violation of his rights, he may not obtain declaratory relief in this lawsuit.

The plaintiff also asks the court for an injunction ordering his transfer to a different facility. Incarcerated persons have no constitutional right to be assigned to a particular prison, Olim v. Wakinekona, 461 U.S. 238, 245–46 (1983), and the court does not have the authority to order the plaintiff's

transfer to a different institution, Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012) ("[P]rison officials have broad administrative and discretionary authority over the institutions they manage." (internal quotation marks and citation omitted)). Even if the plaintiff's amended complaint states a proper Eighth Amendment claim, he may not proceed on his request to be transferred to a different facility.

Finally, even if the plaintiff files a proper amended complaint, and even if the amended complaint seeks proper relief, it appears the plaintiff may not have properly exhausted his administrative remedies before bringing this lawsuit. Under the PLRA, an incarcerated person cannot bring a lawsuit under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The plaintiff attached some documents from his administrative grievance about the defendants' actions in March 2022. The institutional complaint examiner rejected the grievance because the plaintiff filed it well beyond the fourteen-day time limit for filing inmate complaints, and the warden accepted that rejection. Dkt. No. 1-1 at 2, 6. A complaint that is *rejected* for procedural reasons (including its untimeliness), rather than *dismissed* after a determination on the merits, does not exhaust the incarcerated person's administrative remedies. See Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). Contrary to his assertions that he exhausted his administrative remedies, the exhibits the plaintiff attached to his complaint suggest he *did not* exhaust his administrative remedies because he filed his institutional

10
Case 2:22-cv-00639-PP   Filed 10/28/22   Page 10 of 14   Document 9

complaint too late. If that is correct, the court would not be able to consider the merits of this lawsuit—even if the plaintiff alleges a proper claim—and would have to dismiss it without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

But exhaustion is an affirmative defense that the defendants must raise and prove or else they waive it. See Pavey v. Conley, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). The court has not yet ordered the complaint to be served on the defendants and the plaintiff did not attach the full administrative record. Nor did he fully develop his argument about exhaustion, and he is not required to do at the screening stage. See Jones, 549 U.S. at 216–17. The court makes these observations only to make the plaintiff aware that if he files an amended complaint and has not properly exhausted his administrative remedies, the defendants may ask the court to dismiss the case for failure to exhaust.

### III. Motion to Update Plaintiff on Screening Process (Dkt. No. 7)

On September 27, 2022—four months after the plaintiff filed this lawsuit—the court received from him a motion asking for an update on the screening process. Dkt. No. 7. In sum, the plaintiff wanted to know what was taking so long. The answer is the court's calendar. The court has many cases—over 300 civil cases and many criminal cases. Sometimes the court is not able to screen a case as quickly as it would like. The court now has screened the complaint. If the plaintiff timely files an amended complaint, the court will try

11

to get to it promptly, but the timing will depend on the demands of the court's caseload.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **GRANTS** the plaintiff's motion for an update on the screening process. Dkt. No. 7.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **December 2, 2022**. If the plaintiff files an amended complaint in time for the court to receive it by the December 2, 2022 deadline, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the December 2, 2022 deadline, the court will dismiss the case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$332.23** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's

trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Columbia Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank amended complaint form.

Dated in Milwaukee, Wisconsin this 28th day of October, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**