UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SIR JORDAN COSBY,

       Plaintiff,

v.                 Case No. 22-cv-639-pp

JESSICA MAYFIELD
and NURSE SCOTT,

       Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 11) AND ALLOWING PLAINTIFF TO PROCEED ON FEDERAL AND STATE LAW CLAIMS**

  On October 28, 2022, the court screened plaintiff Sir Jordan Cosby's *pro se* complaint under 42 U.S.C. §1983 and found that the complaint failed to state a claim. Dkt. No. 9. The court gave the plaintiff an opportunity to amend his complaint to provide additional details about his claim that the defendants failed to stop him from harming himself in violation of his rights under the Eighth Amendment. Id. at 7–8. The court ordered the plaintiff to file his amended complaint by the end of the day on December 2, 2022. Id. at 12.

  On November 16, 2022, the court received a handwritten amended complaint on the form that the court had sent to the plaintiff with the previous order. Dkt. No. 10. The amended complaint seeks to proceed against the same two defendants as the original complaint, and it appears that the plaintiff signed it and dated it November 15, 2022. Id. at 5. Attached to the amended complaint was an interview/information request; the handwriting on that request is similar to the handwriting on the amended complaint. Dkt. No. 10-1.

1

Five days later, on November 21, 2022, the court received a second, typed proposed amended complaint. Dkt. No. 11. This document is not on the form the court sent to the plaintiff with its October 28, 2022 order. There is a signature on the last page of this document, but it does not resemble the signature on the amended complaint received on November 16, 2022; it is dated November 20, 2022. Id. at 3.

A week after that, on November 28, 2022, the court received a handwritten document titled "Correct and Up Date Proposed Amended Complaint." Dkt. No. 12. The handwriting on this document is the same as the handwriting on the amended complaint received November 16, 2011; this document is dated November 25, 2022. Id. at 2. This document says that the plaintiff is in the restrictive housing unit at Columbia Correctional Institution; it says that on November 16, 2022, "another inmate has filed a[n] amended complaint in [his] name in attempt to jeperdazie [*sic*] [his] lawsuit." Id. at 1. The plaintiff asks the court to "disreg[ar]d the amended complaint dated 11.16.22" and accept the proposed amended complaint dated November 21, 2022. Id.

This situation is odd. The amended complaint the court received on November 16, 2022 was handwritten in the same handwriting as the November 28, 2022 correction and update, and the signatures on these two documents are identical. That amended complaint is on the court's official form—which is what the court's October 28, 2022 order instructed the plaintiff to use. Dkt. No. 9 at 8. Yet the plaintiff appears to be asking the court to disregard *that* amended complaint that he himself wrote, signed and dated November 15,

2

2022, on the court's official form as required, and to accept instead the typed, proposed amended complaint received on November 21, 2022 that is not on the court's form and that bears a very different signature.

It is possible that after the plaintiff filed his own, hand-written amended complaint (Dkt. No. 10, received November 16, 2022), someone else helped the plaintiff prepare the typewritten amended complaint (Dkt. No. 11, received November 21, 2022) and the plaintiff felt that one was better. Although the court doesn't understand why the plaintiff alleged that someone filed the first amended complaint to try to harm his lawsuit, when the first amended complaint clearly is the one he himself wrote, the court nonetheless will follow the instructions in the plaintiff's correction and update (Dkt. No. 12), and will screen the typewritten amended complaint received on November 21, 2022 (Dkt. No. 11).

I. **Screening the Amended Complaint**

    A.    <u>Federal Screening Standard</u>

As the court explained in its previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The amended complaint, like the original complaint, alleges that on March 1, 2022, the plaintiff was in restricted housing at Columbia. Dkt. No. 11 at 1, ¶1. Sometime before 10:00 a.m., the plaintiff told correctional officer Jessica Mayfield and nurse Scott Johnson that he was suicidal and was going to cut himself while the defendants were at his cell. Id. at ¶2. The plaintiff asserts that the Wisconsin Department of Corrections has established training procedures that officials must follow when an incarcerated person expresses suicidal thoughts or plans to engage in self harm. Id. at ¶3. The plaintiff says prison staff must "[m]aintain visual monitoring of that individual to ensure he does not engage in any self harm behavior and to be able to prevent such behavior;" "attempt to handcuff the individual [and] remove him from the cell as a means to abate the risk the individual may have something in the cell he can access to engage in self harm, and the risk he posed to himself;" and "notify the psychological service unit personnel and or a shift supervisor without loosing [*sic*] visual of the inmate, so that a safety assessment can be held and further steps be taken to ensure the inmate safety." Id. at 2, ¶¶4(A)–(C).

The plaintiff alleges that Mayfield and Johnson disregarded the training procedures and instead stood at his cell window and watched him cut himself in what he describes as a suicide attempt. Id. at ¶5. He alleges that the defendants did not intervene "and instead chose to taunt and encourage [the plaintiff] with statements such as 'you are not doing a good job' while he was

engaging in self harm." Id. at ¶6. The plaintiff then covered his window and continued to cut himself. Id. The plaintiff says he had to be transferred to a hospital for "stitches and other medical care." Id. at ¶7. The plaintiff says these events were recorded on Mayfield's body camera, and he has asked the prison to preserve the footage. Id. at ¶8.

The plaintiff asserts that Mayfield and Johnson were deliberately indifferent to the risk he posed to himself when he told them he was going to cut himself and then followed through on that threat. Id. at 2. He also accuses the defendants of being negligent to this risk of harm "because they have a ministerial duty under the constitution and ethically to protect and insure [the plaintiff's] safety not only from the risk that others may posed [*sic*] to him but also from the risk of harm that he posed to himself once they are made aware to such risk." Id. at 3. The plaintiff seeks $50,000 in compensatory and punitive damages. Id.

C. Analysis

The court explained the appropriate legal standards in the previous order:

> The plaintiff's allegations amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976)). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. As a matter of law, "the risk of suicide is an objectively serious medical condition." Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019). Because the plaintiff seeks damages, however, he also must show

that he suffered a cognizable harm as a result of the threat he posed to himself. See Lord v. Beahm, 952 F.3d 902, 905 (7th Cir. 2020).

> When the harm at issue is attempted suicide, the subjective component requires the plaintiff to make "'a dual showing that the defendant[s]: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.'" Lisle, 933 F.3d at 716–17 (quoting Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006)). Satisfying this standard requires showing "'more than mere or gross negligence, but less than purposeful infliction of harm.'" Id. at 717 (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)). In other words, the plaintiff must show that the defendants were "cognizant of the significant likelihood that [the plaintiff] may imminently seek to take his own life." Collins, 462 F.3d at 761. But ignoring "an insincere suicide threat from an inmate wanting nothing more than attention" does not confer liability under the Eighth Amendment. Lord, 952 F.3d at 905. The evidence must show the prison official's "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45).

Dkt. No. 9 at 5–6.

The allegations in the amended complaint are not significantly different from those in the original complaint. The plaintiff alleges that Mayfield and Scott were standing in front of his cell while he cut himself in what he says was a suicide attempt. He repeats his allegation that one of the defendants told him he was "not doing a good job," which suggests the cuts the plaintiff inflicted were superficial and unlikely to pose a serious risk to his health. But he newly alleges that the cuts resulted in him being taken to a local hospital for stitches and other medical care. Unlike the original complaint, which did not allege that the plaintiff suffered any injury, the amended complaint alleges enough for the court to infer that the plaintiff caused a cognizable injury requiring medical

treatment and stitches. Those allegations satisfy the objective element of an Eighth Amendment claim.

It is a close call whether the amended complaint satisfies the subjective component. Unlike the previous complaint, the plaintiff does not allege whether the defendants "knew that he had a 'propensity to engage in self harm.'" See Dkt. No. 9 at 7 (quoting Dkt. No. 1 at 3). He says he began cutting himself in clear view of the defendants, but he covered his cell window after the defendants taunted him and told him he was not doing a good job. The court noted in the previous order that the plaintiff "told both Mayfield and Scott" that he was cutting himself, but to state a claim, the plaintiff must allege facts showing that he was engaged in more than an 'insincere suicide threat.'" Id. (quoting Lord, 952 F.3d at 905). But once again, the difference in the amended complaint is that the plaintiff says he required medical treatment after harming himself. The court can reasonably infer that the defendants were aware the plaintiff's suicide attempt was not insincere and disregarded the risk he posed to himself. The court finds that, for the purpose of this screening order, the amended complaint sufficiently alleges an Eighth Amendment claim.

The plaintiff also seeks to proceed on a state law claim that the defendants were negligent to the risk he posed to himself. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Negligence does not violate the Constitution.

See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001). But the plaintiff may raise this claim under state law. Because the facts related to the plaintiff's claim of negligence are the same as those related to his Eighth Amendment claim, the court will exercise supplemental jurisdiction over the plaintiff's state law claim.

The plaintiff also alleges that the defendants failed to follow Department of Corrections protocol when confronted with a suicidal prisoner. Section 1983 protects only against constitutional violations, not violations of prison regulations or policies. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003)). The plaintiff may not proceed on a claim that the defendants violated Department of Corrections policy by failing to intervene and prevent his self-harm.

## II. Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Jessica Mayfield and Scott Johnson at Columbia Correctional Institution. Under the informal service agreement, the court **ORDERS** the defendants to respond to the amended complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court reminds the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 3rd day of January, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**